---

(66 App. Div. 37.)

### HALPIN v. MUTUAL BREWING CO. et al.

### PEOPLE v. MUTUAL BREWING CO.

(Supreme Court, Appellate Division, Second Department. November 29, 1901.)

1. DEFAULT ORDER—APPLICATION FOR RELIEF—MOTION TO SET ASIDE ORDER.
    The denial of a motion to set aside an order by default authorizing the issuance of execution on a judgment does not bar an application for relief from the default.
2. ORDER FOR EXECUTION—NOTICE TO PURCHASERS AT RECEIVER'S SALE.
    Where the receiver of a corporation sold the property under order of the court while an appeal was pending from a judgment denying a creditor relief against the corporation, which judgment was reversed on appeal, and relief granted, an order authorizing the issuance of execution on such judgment, granted without notice to the purchasers from the receiver, is void.
3. CORRECTION OF RECORD—JUDGMENT AGAINST DISSOLVED CORPORATION.
    Where, pending a creditor's appeal from a judgment denying the relief demanded against a corporation, the corporation was dissolved and a receiver appointed, a motion to correct the record on the reversal of the judgment appealed from, and the entry of judgment against the corporation by making the same against the receiver, was properly denied.

Appeal from special term, Queens county.

Actions by Paul Halpin against the Mutual Brewing Company and others, and by the people against the Mutual Brewing Company. (1) Appeal by the people from an order dated the 6th day of February, 1901, and entered in the office of the county clerk of Queens county, denying a motion to vacate an order made in the above-entitled actions under date of November 23, 1898, granting leave to Denis Coleman to issue execution against the Mutual Brewing Company and Edward Duffy, its receiver. (2) Appeal by the people, in the second of the above-entitled actions, from an order of the supreme court dated the 14th day of March, 1901, and entered in the office of the clerk of Queens county, denying a motion to open the default of the attorney general upon the application which resulted in the making of the aforesaid order of November 23, 1898. (3) Motion, upon a petition of the West Side Bank, for an amendment of the order and judgment of the appellate division upon the appeal in the case of Paul Halpin against the Mutual Brewing Company et al., so that the judgment for $5,175 in favor of Denis Coleman be directed to stand as a valid judgment against Edward Duffy, the permanent receiver of the Mutual Brewing Company. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

C. J. G. Hall (J. V. V. Olcott, on the brief), for appellants.
John A. Dutton, for respondent Denis Coleman.

WILLARD BARTLETT, J. These appeals arise out of the litigation which was considered and determined by this court in the case of Halpin v. Mutual Brewing Co., 20 App. Div. 583, 47 N. Y. Supp. 412. In that suit, which was brought to enforce the Code remedies for the mismanagement of a corporation, the trial court had directed the cancellation of a judgment for $19,300 in favor of Denis Coleman and against the Mutual Brewing Company. The appellate division held that the recovery in favor of Denis Coleman should be sustained to the extent of $5,175, and directed that the judgment so reduced should be permitted to stand. Meantime, pending the appeal to this court in the Halpin Case, the Mutual Brewing Company had been dissolved at the instance of the attorney general, and a receiver had been appointed. This receiver, by the judgment appointing him in the people's suit, was directed to sell the real estate of the Mutual Brewing Company in Queens county, subject to certain liens specified in the order, which made no mention of the Denis Coleman judgment. As already stated, the Denis Coleman judgment had been ordered canceled by the special term decision in the Halpin Case, and the appellate division had not yet modified that decision. This was the condition of things at the time of the receiver's sale. The Denis Coleman judgment had been declared wholly void, and Denis Coleman had appealed to the appellate division. It is true that a stay had been granted to prevent the county clerk from actually canceling the judgment pending the appeal; but nevertheless, when the receiver sold the property, there was of record a special term decree invalidating said judgment, and adjudging that it be canceled. Under these circumstances, the Queens County real estate of the Mutual Brewing Company was sold by the receiver to a purchaser named Karsh, who subsequently conveyed it to the Karsh Brewing Company. After the determination

of this court, sustaining Denis Coleman's judgment to the extent of .$5,175, he obtained an order, dated November 23, 1898, permitting him to issue execution against the Mutual Brewing Company and the receiver. No notice of the application for that order was given to the Karsh Brewing Company, which had acquired the Queens county real estate through the receiver's sale already mentioned. The attorney general received notice of the motion, but did not appear to oppose it, so that it appears to have been granted by default, and without any consideration of the questions of law involved. These were brought up by a motion in behalf of the people to set aside this order of November 23, 1898; but the motion was denied, as it seems, partly on the ground that, if Denis Coleman had no lien, the leave to issue execution harmed no one, and partly because the learned judge was reluctant to set aside the leave granted by another justice. Still later an application was made by the attorney general for relief from his default upon the order of November 23, 1898, but this motion was also unsuccessful.

We think that relief should have been granted to the attorney general upon one of these motions or the other. The effect of the original leave to issue execution upon the reduced Denis Coleman judgment was to create an apparent lien for the amount thereof upon lands sold by the receiver in the people's suit to a purchaser who bought at a time when the Denis Coleman judgment stood adjudged to be wholly void. The attorney general, in a suit in the name of the people for the dissolution of a corporation, may properly appear to sustain the title which the receiver has endeavored to convey through a judicial sale made pursuant to the terms of the judgment. The reasons assigned for opening the default appear to us sufficient, and there is nothing to show that the learned justice who heard the motion did not so consider them. He based his denial of the application solely upon the idea that the denial of the previous motion to set aside the order granting leave to issue execution operated as a bar to a motion to open the default. In this view, we think he was mistaken. Furthermore, the motion to set aside the order of November 23, 1898, might very well have been granted on the ground that the Karsh Brewing Company ought to have had notice of an application to issue an execution which might affect, and certainly was intended to destroy, its title under the receiver's sale. We do not now undertake to determine whether the Denis Coleman judgment was a lien upon the real property in question at the time of the sale by the receiver. That question must first be decided at the special term, after a hearing of both sides on the merits, which has never been had yet. In view of some of the arguments which have been addressed to this court, however, we think it proper to say that in our opinion the case of King v. Harris, 34 N. Y. 330, is not authority for the broad proposition that the reversal or setting aside of an order vacating a judgment revives the lien of the judgment, as though it had never been vacated. The exceptions mentioned in the opinions must not be overlooked. Davies, C. J., after declaring that when an order vacating a judgment is set aside the lien of the judgment is revived in all its pristine vigor, significantly adds, "ex-

cept as to rights acquired in the meantime"; and in the opinion of the court, by Leonard, J., we find this statement:

"The judgment was then held to be irregular and vacated. But that order was erroneous, and was subsequently reversed. As to bona fide purchasers, and those standing in a similar relation, and as to all transactions and proceedings influenced or affected injuriously by the vacation of the judgment, it (i. e. the order of vacation) must be held operative and binding, notwithstanding its erroneous character, provided the transactions were entered into while the judgment appeared from the docket to be vacated."

In the opinion in King v. Harris (in the supreme court) 30 Barb. 471, Mullin, J., says that a reversal does not revive the lien of a judgment for all purposes and against all persons, and proceeds:

"The bona fide purchasers and incumbrancers deal with property with notice, and on the faith of the order vacating the judgment. In other words, they deal with the debtor's property as if the judgment had never been a lien on it. They pay or advance money upon the property freed from the lien of such judgment. Having thus acted, it would be a fraud upon them to revive the lien, and give it a preference over their lien or title." See page 475, 30 Barb.

The rule which we understand to be applicable in such cases is thus stated by Mr. Freeman:

"Generally, however, the vacation of judgment by order of the court leaves the judgment debtor at liberty to dispose of and incumber his real estate as if the judgment had never been rendered. Upon a reversal of the order of vacation, the judgment creditor is restored to all his rights, except so far, only, that his restoration cannot prejudice persons not parties to the suit, in relation to any interest they have acquired during the vacation. But liens existing in subordination to that of the judgment at the date of its vacation will occupy a like subordinate position after its restoration." 2 Freem. Judgm. (4th Ed.) § 381.

Our conclusion is that both the orders appealed from should be reversed, without prejudice, however, to a renewal of the motion for leave to issue execution upon proper notice.

As to the motion to correct the record, we do not perceive how the desired correction is necessary to preserve or protect the rights of any of the parties. The Denis Coleman judgment was not called into existence by the order of this court pronouncing it valid to the extent of $5,175. It was revived, with certain effects upon debtor, creditor, and persons with intervening rights; but such revival did not make it a judgment against the receiver, instead of a judgment against the corporation. The motion should be denied.

Orders reversed, with $10 costs and disbursements on each appeal, without prejudice to a renewal of the motion for leave to issue execution upon proper notice. Motion to correct record denied, with $10 costs. All concur; GOOD RICH, P. J., in result.